UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ORIANA Y.,

                Plaintiff,

         v.                                                                 **DECISION AND ORDER**
                                                   21-CV-303S

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

        1.        Plaintiff Oriana Y.[1] brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied her application for disability insurance benefits under Title II of the Act. (Docket No. 1.) This Court has jurisdiction over this action under 42 U.S.C. § 405(g).

        2.        Plaintiff filed her application for benefits on December 22, 2016. (R.[2] at 260.) Plaintiff alleged disability beginning on April 15, 2015, due to rheumatoid arthritis, generalized anxiety disorder, and depressive disorder. (R. at (43, 125.) Plaintiff's application was denied. Plaintiff thereafter requested a hearing before an administrative law judge ("ALJ"). ALJ Mary Mattimore initially held a hearing on January 24, 2019, but adjourned it to allow Plaintiff to obtain representation. (R. at 32-37.) ALJ Mattimore began a second hearing on June 3, 2019, but adjourned it due to a lack of time to finish. (R. at 38.) On January 27, 2020, ALJ Mattimore completed the hearing, at which Plaintiff, represented by her attorney, appeared and testified. (R. at 71-124.) Vocational expert

---

[1] In accordance with this Court's Standing Order of November 18, 2020, and consistent with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, this Decision and Order will identify Plaintiff by her first name and last initial.

[2] Citations to the underlying administrative record are designated as "R."

Christina Boardman also testified at the hearing. At the time of the hearing, Plaintiff was 27 years old, with a high-school education and some college, and past work experience as a tax preparer, registration clerk, bartender, and server. (R. at 308-311.)

3.      The ALJ considered the case de novo and, on February 7, 2020, issued a written decision denying Plaintiff's application for benefits. (R. at 15-26.) On January 5, 2021, the Appeals Council denied Plaintiff's request to review the ALJ's decision. (R. at 1.) Plaintiff then filed the current action on February 25, 2021, challenging the Commissioner's final decision.[3]

4.      Both parties moved for judgment on the pleadings under Rule 12 (c) of the Federal Rules of Civil Procedure. (Docket Nos. 14, 17.) Plaintiff filed a response on May 31, 2022 (Docket No. 20), at which time this Court took the motions under advisement without oral argument. For the reasons that follow, Defendant's motion is granted, and Plaintiff's motion is denied.

5.      A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971).  Where

---

[3] The ALJ's February 7, 2020, decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

6.      "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review."  Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

7.      The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act.  See 20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled.  482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987).

8.      The five-step process is as follows:

>       First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not,

3

> the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original);

see also 20 C.F.R. § 416.920; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

9.      Although the claimant has the burden of proof on the first four steps, the

Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S.

at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step is divided

into two parts. First, the Commissioner must assess the claimant's job qualifications by

considering his or her physical ability, age, education, and work experience.  Second, the

Commissioner must determine whether jobs exist in the national economy that a person

having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20

C.F.R. § 416.920(a)(4); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954,

76 L. Ed. 2d 66 (1983).

10.      The ALJ analyzed Plaintiff's claim for benefits under the process set forth

above. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful

activity since her alleged onset date of April 15, 2015. (R. at 17.)  At step two, the ALJ

4

found that Plaintiff has the severe impairments of juvenile rheumatoid arthritis, adjustment disorder, anxiety disorder, discogenic change in lumbar spine at L4-5, and spinal stenosis. (Id.)

11.    The ALJ then found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any of the impairments in 20.C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). (R. at 18.)

12.    Next, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform light work except that she can:

> [s]tand and or walk for 6 hours in a day but only for 1 hour at any one time then needs the freedom to sit for approximately 5-10 minutes while on task and at the work station; can sit for the remainder of the day; can  never climb ladders, ropes, scaffolds, kneel, crawl; can occasionally stoop, climb stairs, ramps and crouch; can occasionally push/pull bilaterally and occasionally reach overhead bilaterally; can frequently reach in other directions bilaterally; can frequently finger bilaterally; as to handling can occasionally handle bilaterally, cannot make a complete fist, and cannot perform forceful handling such as using a hammer or screwdriver; can perform a low stress job I define as simple routine work and make simple workplace decisions not at production rate pace (assembly line) [ ].

(R. at 20.)

13.    At step four, the ALJ found that Plaintiff has no past relevant work. (R. at 24.) At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (R. at 25.) Accordingly, the ALJ found that Plaintiff is not disabled. (R. at 26.)

14.    Plaintiff argues that the ALJ's sit/stand limitation is not supported by substantial evidence because it is not supported by any medical opinion. Plaintiff also

argues that the ALJ failed to properly evaluate her subjective complaints. Defendant argues that the ALJ's decision is supported by substantial evidence.

15.     Plaintiff first argues that the ALJ's sit/stand option, wherein she could stand for up to 6 hours per day with the ability to sit for 5-10 minutes after every hour of standing, was not supported by substantial evidence because no medical opinion in the record contains this specific limitation.

16.     In making an RFC determination, an ALJ must consider all relevant medical and other evidence. An RFC assessment may not perfectly correspond to one medical opinion, and the ALJ is entitled to weigh all of the evidence in the record to make the RFC finding. Michele S. v. Comm'r of Soc. Sec., No. 20-CV-547-EAW, 2021 WL 4189705, at *6 (W.D.N.Y. Sept. 15, 2021) (citing Matta v. Astrue, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order)). It is within the ALJ's discretion to resolve genuine conflicts in the evidence. Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002). In other words, "[e]ven where the ALJ's determination does not perfectly correspond with any of the opinions of medical sources cited in his decision, [] the ALJ [is] entitled to weigh all of the evidence available to make a residual functional capacity finding … consistent with the record as a whole." Trepanier v. Comm'r of Soc. Sec. Admin., 752 F. App'x 75, 79 (2d Cir. 2018) (quoting Schaal v. Apfel, 134 F.3d 496, 504 (2d Cir. 1998) ("It is for the SSA, and not this court, to weigh the conflicting evidence in the record.")).

17.     The record shows that Plaintiff suffered from rheumatoid arthritis, a lumbar spine issue, and depression. As for the rheumatoid arthritis, the record is somewhat mixed. Plaintiff testified that she left her previous jobs because she was unable to stand, and that she also could not sit for a long time (R. at 63, 53.) She reported on a form that

she could not stand for more than one hour at a time. (R. at 301.) She testified that she

stopped attending cosmetology school because standing bothered her and her hands

hurt too much. (R. at 87.) She testified that she was able to work four-hour shifts; when

scheduled for longer shifts, she had to take a break to sit or would leave early. (R. at 66-

67.)

18.    On March 8, 2017, consultative examiner Rita Figueroa observed a right

leg limp, difficulty walking on her heels and toes, and limited elbow extension. (R. at 403.)

She additionally noted swelling in Plaintiff's ankles and hands. (R. at 403-04.) She

observed that Plaintiff needed no assistance getting on or off the exam table, did not walk

with an assistive device, and noted that Plaintiff cooked every day, cleaned, did laundry,

and shopped. (R. at 403.) She opined that Plaintiff had moderate limitations with fine

motor skills, marked limitations with gripping, and moderate limitations in prolonged

walking and standing. (R. at 405.) On August 19, 2019, Nurse Practitioner Kathleen

Cloutier observed that Plaintiff had swelling in her hand joints and a slight fixed flexion

deformity of her elbow. (R. at 853.) She observed mild swelling of Plaintiff's knees and

swelling of her right ankle with limited range of motion, but no swelling of the left ankle.

(Id.)

19.    On the other hand, the record demonstrates that Plaintiff was somewhat

inconsistent in her treatment of her rheumatoid arthritis. She was treated by Nurse

Practitioner Josephine Raab on January 18, 2016, and then did not return until December

5, 2016. (R. at 380.) On December 5, 2016, Plaintiff indicated that "everything hurt," but

was not taking any prescription medications. (Id.) On January 6, 2017, she expressed

frustration that Methotrexate was not working, but Raab noted that she had not taken it

7

for more than two months. (R. at 377.) On January 5, 2018, she told Dr. Naga Meka that she was not on any medications. (R. at 588.) When she was taking Methotrexate, at times she complained that it was not working (R. at 568, 800.) She pursued biologic therapeutic infusions, but these were denied by insurance. [4] (R. at 568.) On January 24, 2019, at her annual physical, she reported that her joint pain was better with her current medications. (R. at 698.)  On March 8, 2018, she told her counselor that school was going well, and she was looking to get a waitressing job for extra money. (R. at 624.) She told her counselor on July 9, 2018, that she was not going back to cosmetology school because she was not sure she could attend school while working two other jobs. (R. at 490.)  She also informed her counselor that she had resigned from a job due to issues with her boss. (R. at 774.)

20.     Plaintiff also suffered from lower back pain and sciatica. (R. at 594-95, 585.) She was diagnosed with L4-L5 disc herniation. (R. at 524.) She did not pursue specialized treatment for her back, and on April 21, 2018, a rheumatology consultant noted that her back pain had resolved. (R. at 708.)

21.     The ALJ considered all the evidence in coming to her RFC determination. The ALJ relied on Dr. Figueroa's opinion that Plaintiff had a moderate limitation in standing; and the opinion of Dr. Dickerson, an agency physician, that Plaintiff could stand/walk for 6 hours with only normal breaks. (R. at 131.) The ALJ also incorporated some of Plaintiff's testimony, including that she would need to sit and rest during a 6-8 hour shift at Friendly's, and that she could sit for 5-10 minutes before changing positions,

---

[4] The ALJ indicated that Plaintiff started Simponi Aria infusions after mid-2019, but the record the ALJ cites actually indicates that her insurance denied her providers' request for this therapy. (See R. at 22, 852-54.)

in formulating a more restrictive RFC than either of these opinions, with an option to sit for 5-10 minutes every hour. (See R. at 66, 52.)

22.     Plaintiff argues that the fact that the record contains evidence to the contrary makes the RFC unsupported by substantial evidence. But it was well within the ALJ's role to resolve any conflicts and come to an RFC that was consistent with the record as a whole. The ALJ's assessment the Plaintiff had the ability stand or walk for six hours, with the ability to sit for 5-10 minutes every hour, is not inconsistent with the evidence of record.  Peets v. Kijakazi, No. 21-3150, 2022 WL 17725391, at *2 (2d Cir. Dec. 16, 2022) ("A reasonable mind could accept this evidence as adequate to support the ALJ's conclusion that Peets was not disabled under the meaning of the Social Security Act. Under the substantial evidence standard, our inquiry stops there.").

23.     Plaintiff argues that the specificity of the sit/stand limitation is impermissible unless it is contained within a medical opinion. But this argument misunderstands the ALJ's role. The ALJ's duty is to make an RFC that is consistent with the record as a whole, and the ALJ is permitted to weigh the evidence in formulating a claimant's RFC. Matta, 508 F. App'x at 56. There is no requirement that a particular sit/stand restriction be stated by a medical opinion for it to be consistent with the record as a whole. And here, as discussed above, this Court finds a basis in the record for the ALJ's finding that Plaintiff could stand or walk for 6 hours per day, but would need breaks to sit every hour, and would need to change positions after 5-10 minutes of sitting.

24.     Plaintiff also argues that the ALJ erred in discounting her subjective complaints. Defendant argues that the ALJ properly considered both her subjective complaints and other evidence. Social Security regulations provide that statements of

9

subjective pain alone cannot establish a disability. <u>Genier v. Astrue</u>, 606 F.3d 46, 49 (2d Cir. 2010) (<u>citing</u> 20 C.F.R. § 404.1529 (a)). Instead, an evaluation of subjective complaints should reflect a two-step analysis. <u>See</u> 20 C.F.R. §§ 404.1529, 416.929. First, the ALJ must determine whether the evidence reflects that the claimant has a medically determinable impairment or impairments that could produce the relevant symptoms. <u>Id.</u> Next, the ALJ must evaluate "the intensity, persistence, or functionally limiting effects of [the] symptom[s]," considering (1) the claimant's daily activities; (2) [t]he location, duration, frequency and intensity of [the claimant's] pain or other symptoms; (3) [p]recipitating and aggravating factors; (4) [t]he type, dosage, effectiveness, and side effects of any medication the claimant take[s] or ha[s] taken to alleviate [his or her] pain or other symptoms; (5) [t]reatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of [his or her] pain or other symptoms; (6) [a]ny measures [the claimant] us[es] or ha[s] used to relieve [his or her] pain or other symptoms ...; and (7) [o]ther factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms. <u>Gary C. v. Comm'r of Soc. Sec.</u>, No. 1:20-CV-01358-MJR, 2022 WL 3443834, at *4 (W.D.N.Y. Aug. 17, 2022). (quoting 20 C.F.R. §§ 404.1529 (c)(3)(i)-(viii), 416.929(c)(3)(i)-(vii)).

     25.    If the ALJ rejects a claimant's subjective testimony after considering the objective medical evidence and any other factors deemed relevant, the ALJ must explain that decision "explicitly and with sufficient specificity that a reviewing court must be able to decide whether there are legitimate reasons for the ALJ's disbelief and whether [the] decision is supported by substantial evidence." <u>Id.</u> (quoting <u>Norman v. Astrue</u>, 912 F. Supp. 2d 33, 43 (S.D.N.Y. 2012)).

26.     Plaintiff argues that the ALJ mistakenly relied only on certain elements of the record to find her capable of working. For example, she points to her testimony that she quit cosmetology school because of hand swelling and leg pain. (See R. at 86-87.) But the record also contains evidence that she told her counselor that she did not return to cosmetology school because she was working two jobs, and that she was considering returning to school after the end of a relationship, with no reference to her inability to stand or use her hands. (R. at 490.) Plaintiff testified that she stopped working due to her impairments, but the record shows that she quit at least one job due to harassment and at times considered taking on more jobs to earn extra income. (R. at 774.) The ALJ did not err in considering these facts. Finally, the ALJ did not err in considering Plaintiff's ADLs—not in support of the proposition that Plaintiff could work full time, but as evidence that Plaintiff capable of more than her testimony suggested. See 20 C.F.R. § 404.1529 (c)(3) (in assessing the severity of a claimant's symptoms, the ALJ may consider the claimant's daily activities, as well as the frequency of the symptoms, aggravating factors, medications taken, other treatments pursued, and other measures used to alleviate the symptoms.) The record shows that Plaintiff cooked daily, did laundry, cleaned, worked several part-time jobs, and cared for her children. It also shows that Plaintiff did not take prescription medications for her symptoms for "significant periods of time." (R. at 23.) The ALJ was permitted to consider these factors in determining how much weight to give Plaintiff's testimony. This Court therefore finds no error in the ALJ's assessment.

27.     Having reviewed the ALJ's decision in light of Plaintiff's arguments, this Court finds no error in the ALJ's determination. The decision contains an adequate discussion of the medical evidence supporting the ALJ's determination that Plaintiff was

not disabled, and Plaintiff's aforementioned contentions are unavailing. Plaintiff's Motion

for Judgment on the Pleadings is therefore denied, and Defendant's motion seeking the

same relief is granted.


      IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings

(Docket No. 14) is DENIED.

      FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No.

17) is GRANTED.

      FURTHER, that the Clerk of Court is DIRECTED to close this case.

      SO ORDERED.


Dated:      March 7, 2023
            Buffalo, New York


               s/William M. Skretny
               WILLIAM M. SKRETNY
               United States District Judge